NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| UNITED STATES OF AMERICA | Criminal No.: 12-CR-602 (CCC) |
|---|---|
| v. | OPINION |
| CHIKEZIE ONYENSO, | |
| Defendant. | |

**CECCHI, District Judge.**

### I. INTRODUCTION

This matter comes before the Court by way of the motion of Defendant Chikezie Onyenso ("Defendant") for Bail Pending Appeal. ECF No. 120. The Court has carefully considered the submissions made in support of and in opposition to the instant motion. Based on the reasons that follow, Defendant's Motion for Bail Pending Appeal is denied.

### II. BACKGROUND

Because the Court writes only for the parties, the Court will recite in detail only the facts necessary to provide context for the instant motion. Defendant was arrested on December 31, 2011 for knowingly and willfully soliciting and receiving kickbacks from Orange Community M.R.I. "in return for referring patients to Orange Community M.R.I. for the furnishing or arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program," in violation of 42 U.S.C. § 1320a-7b(b)(1)(A) (the "Federal Healthcare Anti-Kickback Statute") and 18 U.S.C. § 2. Compl. 2.

A federal grand jury returned an indictment on September 7, 2012 and a three-count

1

superseding indictment on February 28, 2013 charging the following: Count One, conspiracy in violation of 18 U.S.C. § 371, from in or about July 2010 until in or about December 2011, to solicit and receive remuneration, directly and indirectly, overtly and covertly, in cash and in kind, for the furnishing and arranging for the furnishing of items and services for which payment may be made in whole or in part under a Federal health care program, namely Medicare and Medicaid, in violation of the Federal Healthcare Anti-Kickback Statute, including (a) kickbacks in the form of "lease payments" from Orange Community M.R.I. in return for referring patients to Orange Community M.R.I. for Ultrasounds and (b) kickbacks in the form of cash payments from Orange Community M.R.I. in return for referring patients to Orange Community M.R.I. for M.R.I.'s and C.A.T. Scans; Count Two, on or about October 11, 2011, knowingly and willfully soliciting and receiving remuneration in the form of a kickback consisting of two envelopes containing approximately $1,280 in cash from Orange Community M.R.I. in return for referring patients to Orange Community M.R.I. in violation of the Federal Healthcare Anti-Kickback Statute and 18 U.S.C. § 2; and Count Three, on or about November 22, 2011, knowingly and willfully soliciting and receiving remuneration in the form of a kickback consisting of one envelope containing approximately $530 in cash from Orange Community M.R.I. in return for referring patients to Orange Community M.R.I. in violation of the Federal Healthcare Anti-Kickback Statute and 18 U.S.C. § 2. Superseding Indictment, ECF No. 26.

On October 15, 2013, following trial, the jury returned a verdict of guilty as to Counts One and Two and not guilty as to Count Three. Jury Verdict, ECF No. 80. Defendant filed a notice of motion for a judgment of acquittal or a new trial on October 22, 2013 on the grounds that the jury verdict was against the weight of the evidence, indicating that Defendant would rely upon defense counsel's brief to be filed subsequently with the Court. ECF No. 82. Defendant

requested and was granted two extensions of time to file his brief in support of that motion, but Defendant did not submit a brief in support of his motion. Rather, in a letter to the Court dated June 2, 2014, three days before Defendant was scheduled to be sentenced, Defendant's counsel indicated that he would rely on the arguments he had made during trial in support of his motion for acquittal or a new trial. ECF No. 100. The Court heard oral argument on Defendant's motion on June 5, 2014, during which Defendant relied on the same arguments that Defendant presented during trial, and denied the motion. Sentencing Tr. 4-9, June 5, 2014, ECF No. 119. The Court then sentenced the Defendant. Defendant appealed on June 25, 2014 and filed the instant motion to stay the commencement of his sentence pending appeal on September 10, 2014, ECF No. 120. The Government has opposed the instant motion. ECF No. 122. The Defendant's surrender date has been delayed during the pendency of this motion.

### III. LEGAL STANDARD

This Court must order that "a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained," unless the Court finds the following:

> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of another person or the community if released . . .; and
> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>   i. reversal,
>   ii. an order for a new trial,
>   iii. a sentence that does not include a term of imprisonment, or
>   iv. a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process.

18 U.S.C. § 3143(b). These requirements are satisfied if the Defendant proves:

> (1) that the defendant is not likely to flee or pose a danger to the safety of any other person or the community if released;
> (2) that the appeal is not for purpose of delay;
> (3) that the appeal raises a substantial question of law or fact; and

3

> (4) that if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed.

United States v. Miller, 753 F.2d 19, 24 (3d Cir. 1985). To determine that the question raised on appeal is "substantial," the Court must find "that the significant question at issue is one which is either novel, which has not been decided by controlling precedent, or which is fairly doubtful." Id. at 23. In addition, the Court must find that the issue is "sufficiently important to the merits that a contrary appellate ruling is likely to require reversal or a new trial." Id. The Court need not predict the probability of reversal; rather, the phrase "likely to result in reversal or an order for a new trial" goes to "the significance of the substantial issue to the ultimate disposition of the appeal." Id. Because a substantial question of law or fact may nonetheless be harmless or have no prejudicial effect or be insufficiently preserved in the circumstances of a particular case, in order to find that reversal or a new trial is likely, the Court must conclude "that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Id.

## IV.   DISCUSSION

There is no indication at this point that the Defendant is a flight risk or a danger to the community, or that Defendant's appeal is for the purpose of delay. See Def.'s Br. 9, ECF No. 120; see generally Opp. Br., ECF No. 122. Nonetheless, the Court must consider (1) whether Defendant's appeal raises substantial questions of law or fact and, if so, (2) whether a decision favorable to Defendant on any of those questions on appeal is likely to result in reversal or an order for a new trial. Miller, 753 F.2d at 24.

Defendant contends that he will raise on appeal three evidentiary issues that present substantial questions of law or fact, and that these questions are likely to result in reversal of his

conviction or the granting of a new trial if decided in Defendant's favor. The Court analyzes each of the issues in turn below, noting that on appeal, in general, evidentiary rulings are reviewed for abuse of discretion, as "[t]he admission or exclusion of evidence is a matter particularly suited to the broad discretion of the trial judge." United States v. Casoni, 950 F.2d 893, 902 (3d Cir. 1991) (internal citations omitted). The Court of Appeals "exercise[s] plenary review, however, of [the district court's] rulings to the extent they are based on a legal interpretation of the Federal Rules of Evidence." United States v. Caldwell, 760 F.3d 267, 274 (3d Cir. 2014) (internal quotations and citations omitted). Because the Defendant has not shown that the issues below raise substantial questions of law or fact that are likely to result in reversal of his conviction on appeal, the Court will deny Defendant's motion.

### A.   Admission of Statements of Faisal Paracha

Defendant argues in the instant motion that the testimony of Krunal "Kenny" Banker ("Banker") regarding the contents of a list of doctors that Faisal Paracha ("Paracha") had shown him, a list that contained the Defendant's name among names of other doctors receiving kickback payments, was inadmissible hearsay, violated Defendant's rights under the Sixth Amendment's Confrontation Clause, improperly introduced evidence of prior bad acts under Federal Rule of Evidence 404(b), and violated Federal Rule of Evidence 1002.

At trial, Banker testified that he began to make kickback payments to various doctors on behalf of Orange Community M.R.I. in 2009. Trial Tr. 54, Sept. 24, 2013. Banker testified that he took over the task of making kickback payments from Paracha, who was then a sales executive at Orange Community M.R.I., and that he knew which doctors to pay because Paracha "showed [him] a list of who are the doctors that [Paracha] was paying." Id. at 59, 67. The Government asked whether the Defendant was one of the doctors who had received kickback payments from

Paracha; Banker answered "Yes." Id. at 70-71. Banker testified further that Paracha showed him how to make lists to keep track of referrals that were made to Orange Community M.R.I. in connection with the kickback payments and how to calculate the amounts of the payments. Trial Tr. 67-70, Sept. 24, 2013. Banker also testified that he personally paid kickbacks to the Defendant, beginning in 2010. Id. at 85-86.

Defendant objected at trial to Banker's testimony that the Defendant's name was on Paracha's list, on the grounds that the testimony was inadmissible hearsay. Id. at 59. The Government argued that the testimony was admissible on two grounds: (1) that it was not offered for the truth of the matter asserted but rather for the effect on the listener, to establish the background for why and how Banker began paying the Defendant and others cash kickbacks,[1] and (2) that it could also be offered for the truth of the matter asserted as Paracha's list was a co-conspirator statement under Federal Rule of Evidence 801(d)(2)(E). The Court overruled the objection. Id. at 65-66. The Court allowed testimony as to Paracha's alleged co-conspirator statements more generally, subject to the Government's establishment of a conspiracy, and later found that the existence of the conspiracy was sufficiently established to permit admission of all of those statements. Trial Tr. 9, Sept. 25, 2013; Trial Tr. 91, Oct. 1, 2013; Trial Tr. 210-211, Oct. 8, 2013.

Defendant now alleges that the admission of statements made by Paracha, including the statements about Defendant's name on Paracha's list, were improperly admitted and violated

---

[1] Banker later clarified in his testimony that, to Banker's knowledge, the Defendant was not receiving kickback payments from Paracha at the time Banker took over the practice from Paracha in 2009 but that Banker began paying Defendant kickbacks in exchange for referrals to Orange Community M.R.I. in mid-2010. See Trial Tr. 71-72, Sept. 24, 2013; Trial Tr. 46, Sept. 26, 2013. Defendant was charged with, and convicted of, conspiracy to violate the Federal Healthcare Anti-Kickback Statute from roughly July 2010 to December 2011. See Superseding Indictment, ECF No. 26; Jury Verdict, ECF No. 80; Judgment, ECF. No. 103.

Defendant's rights. However, Defendant fails to show that a substantial issue exists as to either the admission of the statements under the Federal Rules of Evidence or the alleged violation of his constitutional rights.

First, Defendant does not raise a "substantial question" that is "novel, which has not been decided by controlling precedent, or which is fairly doubtful" as to the admissibility of these statements under the Federal Rules of Evidence. Miller, 753 F.2d at 23. Paracha's notes and statements were not hearsay as they were statements offered against a party that were "made by the party's coconspirator during and in furtherance of the conspiracy." Fed. R. Evid. 801(d)(2)(E). The proponent of the statements must establish "by a preponderance of the evidence that there was a conspiracy between the declarant and the party against whom the evidence was offered; and that the hearsay statements sought to be admitted were made during the course of the conspiracy and in furtherance of its goals." United States v. Gambino, 926 F.2d 1355, 1360 (3d Cir. 1991) (quoting Bourjaily v. United States, 483 U.S. 171, 175-76 (1987)). Further, "coconspirator statements are often admitted against people who become conspirators later on," and "the exception can also apply even if the charged conspiracy differs from (or is not as broad as) the one suggested as the basis for admitting coconspirator statements." 4 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 8:59 (4th ed. 2014); see also United States v. Farhane, 634 F.3d 127, 161 n.35 (2d Cir. 2011) ("Where statements are made in the course of an existing conspiracy in which the defendant later joins, those statements may be admitted against him, even though he was not a member of the conspiracy at the time the statements were made . . . .").

A court may conditionally admit alleged co-conspirator statements, subject to later establishment of the conspiracy. Gambino, 926 F.2d at 1360 (holding that admission of hearsay statements of alleged co-conspirator subject to later establishment of conspiracy was not abuse of

discretion, as "the control of the order of proof at trial is a matter committed to the discretion of the trial judge," and the government's proof consisted of "a large amount of interrelated testimony," such that "the conspiracy became clearly defined only after the testimony of several witnesses") (citing United States v. Continental Group, Inc., 603 F.2d 444, 456 (3d Cir. 1979) and United States v. Ammar, 714 F.2d 238, 245-47 (3d Cir. 1983)). Here, as in Gambino, the Court admitted Paracha's out-of-court statements subject to the later establishment of the conspiracy. See Trial Tr. 65-66, Sept. 24, 2013, Trial Tr. 9, Sept. 25, 2013, Trial Tr. 210-11, Oct. 8, 2013. Thus, Defendant's argument that the Court was required to find a conspiracy existed at the time Paracha's statements were admitted fails to present a substantial issue.

Furthermore, contrary to Defendant's contention that the Court relied solely on the out-of-court statement to find that a conspiracy existed, the Court relied on the interrelated testimony and recordings at trial to find that the government had shown a conspiracy by the preponderance of the evidence, including "the testimony of Krunal Banker, Chirag Patel . . . Criminal Investigator Sharma, the testimony of Mr. Papafloratos, and the totality of other evidence presented in this trial, namely, the recordings of the defendant and other witnesses in this case . . . ." Trial Tr. 210-11, Oct. 8, 2013. Defendant does not appear to argue that the Court erred in ultimately finding that a conspiracy existed, and presents no substantial issue that could result in reversal on appeal.[2]

Second, Defendant's argument that admission of Banker's testimony regarding Paracha's

---

[2] Alternatively, the out-of-court statements regarding Paracha's list could be admissible for "background" purposes, to explain how Banker became involved in the conspiracy and how and why Banker came to visit the Defendant. See United States v. Weston, 526 F. App'x 196, 200 (3d Cir. 2013) (quoting United States v. Sallins, 993 F.2d 344, 346 (3d Cir. 1993)) (noting that "whether a disputed statement is hearsay frequently turns on the purpose for which it is offered," and finding that contents of radio call, offered for purpose of showing why police stopped defendant, did not constitute hearsay); United States v. Price, 458 F.3d 202, 210 (3d Cir. 2006) (holding that out-of-court statement of police officer that defendant had a gun was admissible to explain background context for the arrival of other officers at the scene).

8

list violated Defendant's rights under the Confrontation Clause of the Sixth Amendment also fails to present a substantial question on appeal because that argument is inapposite here. Though Defendant cites Crawford v. Washington, 541 U.S. 36 (2004), in support of this argument that admission of these statements violated his constitutional rights, see Def's Br. 12-13, 23, the Confrontation Clause analysis under Crawford is not implicated where, as here, the out-of-court statements at issue are not testimonial in nature. Crawford, 541 U.S. at 51-52 (defining "testimonial statement" as "*ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially"); see also United States v. Figueroa, 729 F.3d 267, 276 n.14 (3d Cir. 2013) (rejecting application of Confrontation Clause analysis to out-of-court statement in furtherance of conspiracy as statement was not testimonial in nature).

In addition to not presenting a novel or fairly doubtful issue, Defendant has not shown that the admission of testimony as to Paracha's list was "so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." Miller, 753 F.2d at 23. At trial, the Government introduced evidence of Defendant's participation in the charged conspiracy in the form of extensive testimony by cooperating witnesses who testified that they personally conspired to pay kickbacks to the Defendant. See, e.g., Trial Tr. 85-86, Sept. 24, 2013; Trial Tr. 37-38, Sept. 25, 2013; Trial Tr. 38, 40, 47-48, Sept. 26, 2013; Trial Tr. 56-57, 108-09, Oct. 1, 2013. In addition, the Government introduced video evidence of Banker handing Defendant envelopes of cash in exchange for referrals to Orange Community M.R.I. See Trial Tr. 115-124, Sept. 25, 2013; Trial Tr. 15-16, Sept. 26, 2013. In light of the weight of the other evidence against Defendant, admission of

Paracha's statements was not integral to Defendant's conviction.

Finally, Defendant's argument that Banker's testimony about Paracha's list was inadmissible under Federal Rules of Evidence 404(b) and 1002 also fails to present a substantial issue likely to result in reversal of his conviction or a new trial on appeal, as Defendant failed to preserve these evidentiary objections for appeal by failing to make these specific objections at trial during the testimony as to Paracha's list.[3] See Fed. R. Evid. 103(a)(1) (requiring timely and specific objection to evidence allegedly admitted in error); United States v. Iglesias, 535 F.3d 150, 158 (3d Cir. 2008) ("[A] party fails to preserve an evidentiary issue for appeal not only by failing to make a specific objection, . . . but also by making the *wrong* specific objection.") (internal citation omitted). On appeal, the admission of this evidence will be reviewed for "plain error." Id.; see also United States v. Moore, 375 F.3d 259, 260 (3d Cir. 2004).

In addition to the fact that Defendant did not object clearly and timely to the admission of this evidence under Rules 404(b) and 1002, the Defendant has not shown that a substantial question exists as to whether its admission would constitute "plain error." It is not clear that Federal Rule of Evidence 404(b) even applies to the testimony about Paracha's list, as the rule applies only to evidence of "*other* crimes, wrongs or acts" and "[i]f uncharged misconduct directly proves the charged offense, it is not evidence of some 'other' crime." United States v. Green, 617 F.3d 233, 248-49 (3d Cir. 2010); see also United States v. Gibbs, 190 F.3d 188, 217-18 (3d Cir. 1999) ("In cases where the incident offered is a part of the conspiracy alleged in the indictment, the evidence is admissible under Rule 404(b) because it is not an 'other' crime.") (internal quotation and citation omitted). Moreover, while Federal Rule of Evidence 404(b) provides that "[e]vidence of a crime,

---

[3] Rather than objecting to the testimony in question on Rule 404(b) grounds at the time it was offered, Defendant raised the 404(b) issue at sidebar the day following the testimony in question. See Trial Tr. 11-12, Sept. 25, 2013.

10

wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," the rule provides that such evidence may be admissible for other purposes, including "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2).

Defendant's Rule 1002 argument suffers from the same flaws. Defendant argues that Paracha's list should have been excluded because the original version of a writing is required in order to prove its contents. Fed. R. Evid. 1002. Defendant did not raise this objection at trial, however, and the Government's case did not rely heavily on proof of the contents of this writing, but rather introduced the writing as background to the charged conspiracy. In light of the weight of the other evidence against Defendant and the fact that Defendant did not preserve this issue and did not make any argument as to why the admission would constitute "plain error," the Court does not find that this issue presents a substantial one likely to result in reversal of Defendant's conviction on appeal. In sum, Defendant's various objections to the admission of testimony regarding Paracha's list do not present substantial issues likely to result in the reversal of Defendant's conviction or an order for a new trial if decided in Defendant's favor on appeal.

### B.   Admission of Banker's Handwritten Notes

Defendant argues that the Court should not have admitted Banker's handwritten notes, in which he recorded, among other things, the scans referred by each doctor to Orange Community M.R.I. and the amount owed to each doctor in exchange for their referrals for a given month. See Trial Tr. 71-77, Sept. 25, 2013. Defendant raised this objection in a motion *in limine* and reiterated the objection during trial. Following oral argument, the Court denied the motion *in limine* to exclude Banker's notes, finding that, subject to the proper foundation being laid during Banker's

testimony, the notes would be admissible under Federal Rule of Evidence 803(6) as business records. September 20, 2013 Opinion as to Motion in Limine filed by Chikezie Onyenso (hereinafter, the "In Limine Opinion"), ECF No. 58 at 3.[4]

Defendant now contends, as he did in his motion *in limine*, that Banker's notes were "not generated as a regular practice of Banker or [Orange Community M.R.I.,] as Banker admitted [during cross examination] that the Government told him to deviate from his normal recordkeeping practices" and because the notes were "generated at the Government's directions while Banker was working as a Government agent." Def.'s Br. 26-27. Thus, Defendant contends, "the method or circumstances of preparation indicate a lack of trustworthiness." Id. The Court addressed this exact argument in the In Limine Opinion, stating that Banker's practice of keeping records of payments to doctors remained substantially the same after he began cooperating with the Government, that any potential threat of untrustworthiness would be mitigated by Banker's availability to testify and be cross examined at trial, and that the notes could be admitted if the witness laid the proper foundation. See In Limine Opinion 5-6 (citing United States v. Kaiser, 609 F.3d 556, 575 (2d Cir. 2010) (handwritten notes from phone calls were a regular business practice even if not mechanically generated), and United States v. Fujii, 301 F.3d 535, 539 (7th Cir. 2002) (printouts requested by INS were admissible as business records because the data compiled was

---

[4] Business records may be admitted as an exception to the hearsay rule if:

> (A) the record was made at or near the time by—or from information transmitted by—someone with knowledge; (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation or calling, whether or not for profit; (C) making the record was a regular practice of that activity; (D) all these conditions are shown by the testimony of the custodian or another qualified witness . . .; and (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6).

kept and maintained in ordinary course of business, even though printouts themselves were not kept in ordinary course of business)). Banker laid the proper foundation for the admission of the notes, testifying that he consistently kept the notes in question every month for over two years. Trial Tr. 71-74, Sept. 25, 2013.

Defendant relies on the same arguments presented in his *in limine* motion to suggest that the issue of whether the notes were admissible is a substantial issue likely to result in reversal of Defendant's conviction if decided in his favor on appeal, relying specifically on United States v. Casoni, 950 F.2d 893 (3d Cir. 1991). See Def.'s Br. 24-25. For the same reasons discussed in the Court's In Limine Opinion, the Court concludes that Casoni does not require a different result than the one the Court reached in admitting the notes. See generally In Limine Opinion. Moreover, as Defendant states, "trial counsel vigorously cross-examined Banker as to his notes," see Def.'s Br. 27, Trial Tr. 131-34, Sept. 26, 2013, thereby mitigating any prejudice arising from the admission of the notes at trial. Thus, Defendant fails to raise a substantial issue likely to result in reversal of Defendant's conviction or a new trial if decided in his favor on appeal.

### C. Failure to Take Judicial Notice of 31 C.F.R. § 1010.330

Defendant finally argues that this Court erred in failing to take judicial notice of 31 C.F.R. § 1010.330, a cash reporting requirement that defense counsel argues was important to his ability to cross examine Chirag Patel. See Trial Tr. 81-86, Oct. 3, 2013. "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).

At trial, the Court declined to take judicial notice of the regulation because whether the cash reporting regulation applied to Patel was not clear to the Court and was the subject of vigorous

dispute between the parties, see Trial Tr. 77-79, 83-86, Oct. 3, 2013, and therefore the Court reasonably concluded that taking judicial notice of this fact would be inappropriate and could mislead the jury, id. at 80, 86. Defendant presents no legal authority supporting his argument that the Court was obligated to take judicial notice of this regulation and/or its application to the witness. Because the application of the regulation to the witness was a fact subject to dispute, judicial notice was not warranted. See Fed. R. Evid. 201(b); see also, United States v. Mitchell, 365 F.3d 215, 252 (3d Cir. 2004) (holding that taking judicial notice of fact that was disputed by extensive hearing was inappropriate); Buczek v. Continental Cas. Ins. Co., 378 F.3d 284, 290 (3d Cir. 2004) (judicial notice as to "imminent collapse" of house, where house's vulnerability to ninety mile-per-hour winds was debatable, was inappropriate). Thus, the Defendant fails to present a substantial question as to this issue.

In light of defense counsel's cross-examination of Patel, including exploration of Patel's cooperation with the Government and how that may have favorably influenced Patel's plea agreement, see, e.g., Trial Tr. 33-35, Oct. 2, 2013, the Court declining to take judicial notice of this cash reporting requirement was not integral to Defendant's ability to cross-examine Patel, and, as noted above, in light of the weight of the evidence against the Defendant, this was not integral to Defendant's conviction.

## V. CONCLUSION

For the reasons above, the Court denies Defendant's Motion for Bail Pending Appeal. An appropriate order accompanies this opinion.

DATED: June 16, 2015

_____
**CLAIRE C. CECCHI, U.S.D.J.**